ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Left Hand Design Corporation | ) ASBCA No. 62458 |
| | ) |
| Under Contract Nos. N00014-10-C-0306 | ) |
| FA8651-08-C-0155 | ) |

APPEARANCE FOR THE APPELLANT: Mr. Lawrence M. Germann
President

APPEARANCES FOR THE GOVERNMENT: Samuel W. Morris, Esq.
DCMA Chief Trial Attorney
Matthew D. Bordelon, Esq.
Trial Attorney
Defense Contract Management Agency
Chantilly, VA

OPINION BY ADMINISTRATIVE JUDGE YOUNG

Left Hand Design Corporation (LHDC or appellant) appeals a claim by the Defense Contract Management Agency (DCMA or the government) for penalties for expressly unallowable costs. We have jurisdiction under the Contract Disputes Act, 41 U.S.C. §§ 7101-7109. The parties elected to proceed under Board Rule 11, decision on the record, and have submitted a joint stipulation of undisputed material facts (JSF) in support of their Rule 11 briefs. For the reasons discussed below, we deny the appeal.

FINDINGS OF FACT

1. On April 3, 2017, LHDC submitted its Fiscal Years ("FYs") 2009 through 2015 final indirect cost rate proposals ("FICRPs") to Andrea Arapkiles, the Administrative Contracting Officer ("ACO") (R4, tab 3; JSF ¶ 1).

2. On August 8, 2018, DCAA released the Independent Audit Report on Left Hand Design Corporation's Proposed Amounts on Unsettled Flexibly Priced Contracts for FYs 2009, 2010, 2011, 2012, 2013, 2014, and 2015 ("the Audit Report") (R4, tabs 8-9; JSF ¶ 5).

3. In the Audit Report, DCAA questioned several costs as unallowable and subject to penalty for FYs 2009 through 2015 (R4, tab 9; JSF ¶ 6).

4. On July 24, 2019, in an email to Mr. Lawrence Germann, LHDC's president, ACO Arapkiles attached a spreadsheet identifying the questioned costs by fiscal year, types of costs, and the Federal Acquisition Regulation (FAR) cost principle associated with each of the costs. The ACO requested that Mr. Germann review the spreadsheet and respond whether the costs identified were expressly unallowable, and whether she should waive any penalties; the ACO also requested that LHDC provide any additional information she should consider prior to making a final penalty assessment determination. (R4, tab 10 at G- 000136-37; JSF ¶ 7)

5. On July 25, 2019, LHDC responded that it had misclassified certain costs in Schedule C of its FY 2011 FICRP and provided their correct classification (R4, tab 4; JSF ¶ 8).

6. In an email to ACO Arapkiles on August 6, 2019, Mr. Germann stated:

> **Appreciation Expenses, a.k.a. Interest:** We were not aware that the appreciation of the stock options that were issued as deferred compensation for our employees was an unallowable expense.
>
> . . . .
>
> At this time, we accept that the 2011 appreciation payments are unallowable expenses, but we request a waiver of the penalties associated with this error because we were not aware of this difference between IRS and FAR rules regarding them and because we made no financial gain from this error. Since this type of transaction (expense from stock option appreciation) had not occurred previously, we had no experience with it.
>
> **Federal Income Tax:** We have tried to determine if our bookkeeper, Perrin Elisha, had known that interest paid and federal income tax were unallowable expenses. The spreadsheet that Perrin generated to estimate our overhead and G&A rates on an ongoing basis, along with the earlier ICE reports, included interest paid and federal income tax along with allowable overhead expenses, although there were very little, if any, of either of these in LHDC's early years. Perhaps the fact that these amounts were negligible

2

explains why DCAA did not teach us earlier that these are unallowable expenses.

> . . . .

**Summary:** . . . .

> . . . .

Until May of 2013, our bookkeeper, Perrin Elisha, was our sole contact with DCAA and she successfully worked with DCAA to generate all of the ICE reports that were submitted up to that time. For the above-mentioned reasons, and because we trusted Perrin's work, none of the rest of us spent much time following the results, except to confirm that the rates had been determined and that there was no change to the previously invoiced cost-type programs. When Perrin left LHDC in 2013, she did not brief any of the remaining employees regarding [the] generation of ICE reports, so we had no experiential data base and simply used the 2005 ICE report as a model for the 2009-2015 batch of ICE submittals. Our earlier ICE reports treated federal income tax the same way and we believe that they were accepted by DCAA, although we are still working to locate DCAA's determinations for these years. In any case, the federal tax payments for these years were relatively small amounts (<$8,000).
When we discussed the penalties with Regina Lanier, she gave us the impression that they would be waived for a variety of reasons, perhaps the most important being that the determination of rates had not been important to us because we had very few cost-type programs and they all had price caps and had all been over-spent, which meant that the rates had virtually no financial impact to us.
In summary, we believe that these mistakes represent our honest attempts to climb the learning curve regarding rate determination. The advisors we used to generate and review these reports were not aware of those differences between legitimate IRS deductions and allowable ICE expenses. We have not benefited from these mistakes and we did not make them with the intent to benefit financially.

(R4, tab 11 at G-000144-46; JSF ¶ 9)

3

7. On September 23, 2019, DCAA auditor Ms. Regina Lanier clarified in an email to the ACO the statement that she purportedly made to LHDC regarding waiver of penalties:

> 1) . . . .
>
> 2) In response to your request as to what was said in our exit conference regarding waiver of penalties: Although it is impossible to recall exactly what was said, I do recall speaking candidly about penalties "possibly" being waived for the reasons LHDC mentioned; not that they "would" be waived because this is not for us (DCAA) to determine. Because of our initial approach to report costs at contract levels as done in prior FY 2005 Audit Report No. 3121- 2005J10100024, dated April 30th, 2008; the thought process was that the same approach would be accepted for these audited years. The FY 2005 audit did not provide details of questioned indirect expenses; however for this audit, it was decided to provide details and rate adjustments for each year due to the expressly unallowable costs in accordance with FAR 42.705-2 – Auditor Determination Procedure.

(R4, tab 12 at G-000150; JSF ¶ 13)

8. On October 1, 2019, the ACO issued penalty waivers for FYs 2009, 2012, and 2015 (R4, tab 22). The ACO explained that "[b]ased on requirements of FAR 42.709-5(b), Waiver of Penalty, the penalty is waived because the amount of unallowable costs under the proposal which is subject to the penalty is under $10,000" (R4, tabs 23-25; JSF 14). The ACO also waived penalties associated with FY 2010 final indirect cost rate proposal for the same reason (R4, tab 27 at G-000195-96; JSF ¶ 16).

9. In an email to the ACO on November 7, 2019, Mr. Lawrence Germann stated the following:

> We have received modified penalty letters on 1 October 2019 for the 3 years (2009, 2012 and 2015) with penalties less than $10,000. We understand that the other 3 year's [sic] penalty letters have not been modified because their penalties are greater than $10,000.

Left Hand Design Corporation has changed it [sic] policy regarding these types of expenses. We now understand that Stock Option Appreciation, Federal Tax and Interest expenses are not allowable costs and will not be included as allowable expenses in the calculation of our indirect cost rates in our future proposals. We have completed the training of our current personnel; Susanne Blanchette, Lynda Shaw, Mike Tobin and Scott Lyle, that is required to assure this change to our procedures. These costs were inadvertently included in our cost proposals for years prior to and including 2015 because the applicable personnel (Susanne, Lynda, Mike, Scott and Perrin Elisha) were not aware that these expenses are unallowable. We have modified our Administration Procedure Manual to include these changes and to provide a management review process to confirm that future Indirect Cost Rate Proposals do not contain any of these errors.

(R4, tab 13 at G-000158; JSF ¶ 15)

10. In an email to ACO Arapkiles on January 14, 2020, Mr. Lawrence Germann added:

**Waiver for Established Policies or Inadvertently Incorporated:** Per the statements on our message of 7 November 2019, we were hoping that you might waive the 2011 and 2013 penalties based on the conditions specified in paragraphs (c)(1) and (c)(2) of your 1 October 2019 letters. Per paragraph (c)(1), we attempted to demonstrate that we have established policies, personnel training and control to assure that this mistake will not reoccur. Per paragraph (c)(2), we attempted to demonstrate that these mistakes had been done inadvertently, even though we reviewed them internally and hired a consultant (Grover Sams) to help Susanne, Scott and Lynda generate the ICE submissions.

**2011 Stock Option Accruals:** For the year 2011, the "Interest Expense" ($34,008 paid to Don Lutter) and "Officer's Accrued Interest" ($90,757 paid to Larry Germann) line items were payments of Accrued Stock Option expenses. These stock options were created as a commitment for deferred compensation for work

5

performed during the first few years of our operation from 1993 to 1995 by our 8 employees of that time period. Conversion and repurchase of these options occurred in 1998, 2003 and 2011. In 2011, the last of the stock options were converted to stock and repurchased by LHDC. We believe that this makes these items allowable labor compensation expenses rather than unallowable interest expenses.

**2011 Colorado State Income Tax:** The 2011 line item for "Federal Corp Inc Tax Exp" ($2,562) was confirmed to be a payment for Colorado State income taxes, which we believe is an allowable expense, rather than federal income taxes, which are unallowable expenses.

**2011 Federal Income Tax:** The 2011 line item titled "Deferred Tax Expense" ($52,578) is indeed our federal income tax payment and we agree that this is an unallowable expense, but we suggest that it is not Subject to Level One Penalty, based upon your 19 December 2019 determination for 2010.

**2013 Federal Income Tax:** The 2013 line item for "Federal Corp Inc Tax Exp" was confirmed to be federal income tax and we therefore agree that this is an unallowable expense, but we suggest that it is not Subject to Level One Penalty, based upon your 19 December 2019 determination for 2010.

(R4, tab 11 at G-000141-42; JSF ¶ 17) Thus, we find that LHDC modified its policies and procedures after the costs were disallowed.

11. On January 17, 2020, ACO Arapkiles responded to LHDC:

I appreciate that you have conducted training and implemented processes to avoid including unallowable expense in future years, should you receive cost type contracts with the Government in the future these processes and understanding of the cost principles will be beneficial for LHD. However, based on the response provided to me August 6, 2019, there was concern for LHD's apparent disregard of the FAR requirements. While I don't believe there is malicious intent or financial

6

> gain in including unallowable costs, I also don't believe
> that you did your due diligence in understanding the FAR
> requirements and relied on DCAA to identify wrong
> doings.
>
> As for the deferred tax expense, there is a difference
> between FY 2010 and 2011/2013, DCAA was actually able
> to tie the FY 2011/2013, cost back to your tax records and
> clearly identify them as federal income tax expenses,
> which are expressly unallowable costs.
>
> The state income tax that was misidentified as federal
> income tax has been removed for the penalty calculation as
> it is an allowable expense.
>
> The final determinations for these two years are forth
> coming.

(R4, tab 26 at G-000190; JSF ¶ 18)

12. On January 17, 2020, ACO Andrea Arapkiles issued two Contracting Officer's Final Decisions ("COFDs"), one addressing FY 2011 and the other FY 2013 (R4, tab 11 at G-000140, tab 16; JSF ¶ 19).

13. For FY 2011 the ACO determined that costs in the amount of $177,343 were unallowable. The ACO calculated the FY 2011 penalty to be $59,977, with an interest component of $693, for a total payment demand of $60,670. (R4, tab 14 at G- 000160-62; JSF ¶ 20-21)

14. As to FY 2013, the ACO determined costs in the amount of $236,241 were expressly unallowable. The ACO calculated the FY 2013 penalty to be $12,426 and made a demand for payment for that amount. (R4, tab 14 at G-000166-67; JSF ¶ 23-24)

15. In an email to the ACO on February 10, 2020[1], Mr. Lawrence Germann stated:

> Thank you for the extensive effort you have invested in
> these issues. However, we believe that we qualify for
> waivers of these penalties based upon FAR 42.709-5(c).

---

[1] The parties' JSF 25 mistakenly states the date of this email as January 20, 2020.

You have not been specific about which aspect of FAR 42.709-5(c), (1) or (2), causes you to find insufficient facts and evidence to support our request for waivers and we believe that we have satisfied both requirements.

**Waiver Requirement FAR 42.709-5(c) (1):** The earlier (3:18pm) of your two 17 January 2020 messages states that you "appreciate that you have conducted training and implemented processes to avoid including unallowable expense in future years". Since this is essentially the same as the basis for a waiver based upon FAR 42.709-5(c) (1), which is: "It has established policies and personnel training and an internal control and review system that provide assurance that unallowable costs subject to penalties are precluded from being included in the contractor's final indirect cost rate proposals", we expect that this portion of the a [sic] waiver requirement has been achieves [sic] to your satisfaction. If there is more that you believe must be done to achieve this, please advise us.

**Waiver based upon FAR 42.709-5(c) (2):** We believe that you have misinterpreted my statement about intentionally over-spending the contracts, when you find insufficient facts and evidence to support our request for waiver. You apparently have concluded that we included the unallowable costs intentionally. Perhaps this because we failed to state clearly and directly that "these mistakes were made unintentionally", instead stating that "these mistakes represent our honest attempt to climb the learning curve".

As stated in our 6 August 2019 message, these contracts are for Phase II SBIR programs and therefore have fixed-price cost caps, which means that our over-spending of the contracts did not result in us receiving additional funds and we did not financially benefit from over-spending them. Our over-spending of these contracts resulted only in negative profit, which we willingly accepted to further the research and for the sake of assuring that we would not have to return any of the cost-capped values of the contracts in the event that our final rates might come out less than the provisional billing rates.

These Phase II SBIR contracts are research programs. We willingly over-spend these cost-capped programs, knowing that the additional effort will not result in us receiving additional funds, because it is beneficial for us to gain as much from the research as possible. We also do this, as I tried to explain on 6 August 2019, because it reduces the risk of having to return funds in the event that our finally determined overhead and G&A rates are lower than the provisional billing rates.

Although we spent hundreds of hours studying our earlier submissions of the ICE spreadsheet and the FAR, learning how to complete and submit our proposals properly, we failed to notice that federal taxes and interest payments are unallowable expenses. We used our earlier submissions, generated by Perrin Elisha, who no longer worked for the company and was not available for comment, as templates for these submissions. In at least two of these earlier submissions (2002 and 2003), interest payments and federal taxes were classified as allowable expenses and these mistakes were not caught by DCAA's audits of those years. Further, we believed that payments for the deferred compensation of employees for their efforts in the first few years of our existence were allowable expenses and failed to predict that they would eventually be classified as unallowable interest payments. These were unintentional mistakes.

The earlier of your two 17 January 2020 messages, with your final decision, appears to have misunderstood our explanations, apparently with the determination that we had intentionally over-stated our indirect costs in the ICE reports by including expressly unallowable costs. This was certainly not the case. Our inclusion of federal taxes and interest expenses in our indirect cost pools was unintentional and happened because we did not know that these are unallowable expenses.

Intentionally over-spending the contracts, which we did, is completely different from intentionally including unallowable costs in our indirect rate pools, which we did not do. The fact that we intentionally over-spent the contracts means that we had an abundance of legitimate

costs to justify 100% payment of the cost-capped values of the contracts, even if our rates were eventually reduced. Therefore, we would not have received any less money if we had not submitted the disallowed costs. We would have submitted one or more invoices with additional portions of our legitimate expenses to justify the payment of the full cost-capped value of the contracts.

**Summary:** In short, we have been in shock since we discovered that you continue to believe that the unintentional mistakes we made, without financial gain and without intention to gain financially, justify making us to [sic] pay $73,096 in penalties and interest.

(R4, tab 11 at G-000138-40; JSF ¶ 25)

16. On April 16, 2020, LHDC timely appealed the COFDs to our Board (JSF ¶ 26).

## DECISION

*Contentions of the Parties*

The parties, in the joint stipulation of undisputed material facts (JSF), agreed that the issues before us are as follows:

> 1. The parties agree that the costs addressed and disallowed in the Administrative Contracting Officer's two January 17, 2020 final decisions are expressly unallowable and that the primary issue before the Board is whether LHDC is entitled to a waiver, pursuant to FAR 42.709-5(c), as detailed in its Complaint.
>
> 2. The secondary issue before the Board is whether the Administrative Contracting Officer correctly calculated the interest component of the penalty in her final decision addressing LHDC's fiscal year 2011, as detailed in LHDC's Complaint at item 3) of 5.0 Pleading (paragraph 11) and 5.3 Interest Charge (paragraph 20).

(JSF ¶ 27)

10

Appellant withdrew its contention on the second issue regarding the validity of the calculations of interest charges related to the penalty assessed for errors in its FY2011 ICE submission (app. br. ¶ 3.3.2). Accordingly, we only focus on the first issue, that is, whether LHDC is entitled to a waiver.

*Standard of Review*

"The Board's scope of review of the CACO's [corporate administrative contracting officer's] discretionary determination is narrow and we are not to substitute our judgment for his." *Raytheon Company*, ASBCA No. 57743, 17-1 BCA ¶ 36,724 at 178,854. The agency, however, must have examined the relevant data and articulated a satisfactory explanation for its action, including a rational connection between the facts and the action. *Raytheon Co.*, 17-1 BCA at 178,845-46. A contractor bears a heavy burden to prove that a contracting officer's determination not to waive a penalty was an arbitrary and capricious abuse of discretion. *Id.*.

*Request for Waiver*

FAR 42.709-4 implement statutes[2] that require the head of the agency to assess a penalty against a contractor that submits costs expressly unallowable under a cost principle, unless a waiver is granted. The pertinent FAR provision establishes that the contracting officer (CO) shall waive the penalty if the amount of the unallowable costs subject to the penalty is $10,000 or less. For costs above $10,000, the FAR establishes that the cognizant CO shall waive a penalty when the contractor demonstrates, to the cognizant CO's satisfaction, that:

> (1) It has established policies and personnel training and an internal control and review system that provide assurance that unallowable costs subject to penalties are precluded from being included in the contractor's final indirect cost rate proposals (*e.g.,* the types of controls required for satisfactory participation in the Department of Defense sponsored self governance programs, specific accounting controls over indirect costs, compliance tests which demonstrate that the controls are effective, and Government audits which have not disclosed recurring instances of expressly unallowable costs); and

> (2) The unallowable costs subject to the penalty were inadvertently incorporated into the proposal; *i.e.,* their

---

[2] The implemented statutes are 10 U.S.C. § 3743 and 41 U.S.C. § 4303 (FAR 42.709-1, Scope).

11

> inclusion resulted from an unintentional error, notwithstanding the exercise of due care.

48 C.F.R. § 42.709-5(c)[3].

Thus, under the statute the penalty is mandatory in unallowable costs above $10,000, and the CO has no discretion to waive it unless the two requirements in the exception are met to the CO's satisfaction. We examine each of the two requirements in turn.

*1. [The contractor] has established policies and personnel training and an internal control and review system that provide assurance that unallowable costs subject to penalties are precluded from being included in the contractor's final indirect cost rate proposals.*

Appellant argues that the ACO erred in failing to grant a waiver because LHDC established policies once the unallowable costs were identified. LHDC posits that "the ACO confirmed that the first condition has been satisfied with the statement 'I appreciate that you have conducted training and implemented processes to avoid including unallowable expense in future years'" (app. br. ¶ 3.3.1.4). The record demonstrates, however, that LHDC established these policies *after* the costs were disallowed (findings 9,10).

It is well settled that a contractor must have established policies, personnel training and an internal control and review system to ensure that unallowable costs are not included in final indirect cost rate proposals *at the time* the costs in question are included in the indirect cost proposal. In *Exelis Inc.*, ASBCA No. 58966, 17-1 BCA ¶ 36,708 at 178,752, the Board held that the contractor was not entitled to a waiver of penalties because its policies, personnel training and internal control review "did not become effective until 31 October 2011, well after it submitted the 2006 indirect cost proposal on 20 July 2007" *Exelis Inc.*, 17-1 BCA ¶ 36,708 at 178,751. Similarly, in *Energy Matter Conversion Corporation*, ASBCA No. 61583, 19-1 BCA ¶ 37,225 at 181,209, the Board concluded that in order for the penalty waiver to apply, a contractor must have policies established *at the time* it submitted its erroneous FICRP. *Energy Matter,* 19-1 BCA ¶ 37,225 at 181,209 (emphasis added). The Board in *Energy Matter* held that "even if [appellant] . . . updated its policies on January 26, 2017 this was after its submission of the [FICRPs] on June 30, 2016 and it cannot avail itself of the

---

[3] In 2021 this regulation was transferred from 48 C.F.R. § 42.709-5(c) to 48 C.F.R. § 42.709-6(c); however, as this regulation was located at § 42.709-5(c) at the time the contracts were executed, we will continue to cite to that section throughout this appeal.

penalty waiver." *Id.*.  The Board concluded that "by asserting that it did not update its policies to address the error until January 26, 2017, [the contractor] effectively concedes that it did not have adequate policies in place at the time it submitted the [FICRPs] on June 30, 2016." *Id.*

The language of the regulation, FAR 42.709-5(c), read as a whole, supports that the policies must be in place *at the time* the questioned costs were submitted. The regulation requires both requirements – the existence of policies AND the inadvertent submission of the unallowable costs – to be met for a contractor to merit a waiver of the penalty.  These are not alternative conditions, they must BOTH exist to merit a waiver of the penalty.  The Board in *Exelis* concluded that the contractor was not entitled to a waiver of unallowable entertainment costs because the documents submitted *prior* to the policy being put in place did not show "that Exelis had established policies, personnel training, and an internal control and review system that provided assurance that entertainment costs were precluded from being included in final indirect cost rate proposals." *Exelis Inc.*, 17-1 BCA at 178,751.  We note that the very language of the requirements in FAR 42.709-5(c) mirror each other.  The second prong of the regulation requires the contractor to exercise due care not to inadvertently submit unallowable costs subject to penalties, while the first prong requires the contractor to have policies to avoid the submission of unallowable costs subject to penalties.  Read together, it becomes logical to conclude that the requirement of due care not to submit *unallowable costs subject to the penalty* would include reviewing and complying with the contractor's policies, personnel training and internal control and review systems "that provide assurance that *unallowable costs subject to penalties* are precluded from being included in the contractor's final indirect cost rate proposals".  It is not possible to review a policy that has not yet been put in place[4]. Accordingly, we conclude that the policies must be in place at the time the questioned costs are submitted.  This conclusion harmonizes the requirement that both prongs must be met to merit a waiver, and is consistent with the holding in *Exelis* that the policies must be in place *at the time* the questioned costs were submitted.

In the case at hand, appellant made it clear that it established policies reactively, after the unallowable costs were identified:

---

[4] Our Board has held that it is not sufficient to meet the first prong for a waiver that the contractor reactively establishes policy after the unallowable costs subject to penalty are identified (*see, Thomas Associates Thomas Associates, Inc.*, ASBCA 57795, 12-2 BCA 35,162 at 172,548; *Inframat Corporation*, ASBCA No. 57741, 12-2 BCA ¶ 35,113 at 172,432)*.

13

> Left Hand Design Corporation has changed [its] policy regarding these [unallowable] expenses. *We now understand* that [these] are not allowable costs and will not be included as allowable expenses in the calculation of our indirect cost rates *in our future proposals*. We have *completed the training of our current personnel*; Susanne Blanchette, Lynda Shaw, Mike Tobin and Scott Lyle . . . [who]were not aware that these expenses are unallowable. *We have modified our Administration Procedure Manual* to include these changes and to provide a management review process *to confirm that future Indirect Cost Rate Proposals do not contain any of these errors.*

(Finding 9) (emphasis added)

As in *Energy Matter*, we conclude that by asserting that it did not update its policies until after the unallowable costs were identified, LHDC effectively concedes that it did not have adequate policies in place at the time it submitted the FICRPs.

Appellant argues that the ACO, by stating that she appreciated that LHDC had "conducted training and implemented processes to avoid including unallowable expense in future years," made a finding that LHDC fulfilled the first requirement for a waiver (app. br. ¶ 3.3.1.4). However, the very language of the CO's statement reveals that the CO concluded that the policies were not in place at the time the unallowable costs were submitted, but were established "for future years." Even if the ACO appreciated appellant's measures, that does not change the fact that appellant did not have policies, personnel training and an internal control and review system in place to ensure unallowable costs were not included in its final indirect cost rate proposals *at the time it submitted* the FICRPs. We conclude that appellant fails to meet the first requirement for a waiver, as it did not demonstrate to the cognizant contracting officer's satisfaction, that it had the required policies in place at the time the unallowable costs were submitted.

*2. The unallowable costs subject to the penalty were inadvertently incorporated into the proposal; i.e., their inclusion resulted from an unintentional error, notwithstanding the exercise of due care.*

Appellant posits that it meets the second requirement of FAR 42.709-5(c) because it did not act with malicious intent or for its own financial gain in including the unallowable costs in the FICRPs. While we will briefly address this contention, the regulation requires the contractor to meet both requirements of the test and we have already ruled that it does not meet the first prong.

14

LHDC asserts that the unallowable costs "were inadvertently included in our cost proposals for years prior to and including 2015 because the applicable personnel (Susanne, Lynda, Mike, Scott and Perrin Elisha) were not aware that these expenses are unallowable" (finding 9), that its comptroller had departed the company without training her replacement on the submission of FICRPs (finding 6), and that "DCAA did not teach us earlier that these are unallowable expenses…" (finding 6). LHDC argues that the ACO confirmed that she did not believe there was malicious intent or financial gain in LHDC including unallowable costs, so appellant argues, LHDC fulfilled the second requirement of the FAR and yet the ACO failed to grant a waiver (app. br. ¶ 3.3.1.5).

The FAR requirement for a waiver is that the unallowable costs were "inadvertently incorporated into the proposal as a result of unintentional error, notwithstanding the exercise of due care." FAR 42.709-5(c)(2). Appellant posits that it meets the second requirement because the unallowable costs were inadvertently included in its cost proposals because the applicable personnel were not aware that these expenses are unallowable (finding 9), that its comptroller had departed the company without training her replacement on the submission of FICRPs (finding 6), and that "DCAA did not teach us earlier that these are unallowable expenses . . ." (finding 6). Even if the contracting officer stated that she did not believe there was malicious intent or financial gain on LHDC's part in including unallowable costs, the requirement for a waiver is unintentional error, not whether there was financial gain to the contractor. In her determination not to waive the penalty, the contracting officer, having considered LHDC's assertions that the mistakes "were done inadvertently, even though we reviewed them internally and hired a consultant" (finding 10) she nevertheless concluded that she did not believe "that you did your due diligence in understanding the FAR requirements and relied on DCAA to identify wrong doings" (finding 11). We agree. It is not DCAA's job to "teach" a contractor about cost principles (*see Inframat Corporation*, ASBCA No. 57741, 12-2 BCA ¶ 35,113 at 172,432, where the Board held that the contractor failed to exercise due care in preparing its FICRP when an inexperienced controller included expressly unallowable costs in the FICRP under the misunderstanding that DCAA would later tell him what costs were not acceptable). The fact that LHDC did not provide training to its personnel after the comptroller left, that it merely relied on previous FICRPs to formulate its FY 2011 submission, and that it expected DCAA to teach it that the submitted costs were unallowable expenses, taken as a whole, do not show the exercise of due care. Further, LHDC did not inadvertently include the questioned costs in its FY 2011 submission. Rather, it included them "because the applicable personnel were not aware that these expenses are unallowable" (finding 9). Accordingly, we agree with the contracting officer that appellant did not meet the second requirement for a waiver under FAR 42.709-5(c).

15

The FAR requires that the contractor demonstrates, to the cognizant contracting officer's satisfaction, that it has met both requirements to merit a waiver. The government posits that the contracting officer's decision not to waive the penalty for FY 2011 and FY 2013 was not arbitrary and capricious or made in abuse of discretion. Relying on *Raytheon Co.*, 17-1 BCA at 178,845 ¶ 36,724 at 178,853, the government posits that the Board considers four factors when determining whether a contracting officer's decision is arbitrary or capricious or an abuse of discretion: (1) whether there is evidence of subjective bad faith on the part of the CO; (2) whether the CO had a reasonable, contract-related basis for the decision; (3) the amount of discretion given to the CO; and (4) whether there was a proven violation of a statute or regulation. *Id*. at 178,845. As to the first factor, appellant does not allege, and we find no evidence in the record supporting bad faith on the part of the CO. Secondly, we found that LHDC had no policies in place at the time the unallowable costs were submitted and that it did not act with due care to avoid submitting unallowable costs in its proposal. The CO articulated this in her decision not to waive the penalty. The record supports that the CO had a reasonable, contract-related basis for the decision not to waive the penalty. Third, the CO had very little discretion here because the statute mandates a penalty and LHDC clearly did not meet the requirements for a waiver[5]. Additionally, nothing in the record supports that the decision was made by other than the ACO exercising her discretion. Although appellant asserts that the DCAA auditor "gave us the impression that [the penalties] would be waived for a variety of reasons" (finding 6), the auditor clarified that she may have stated that the penalties may "possibly" be waived, not that they "would" be waived, "because it is not for us (DCAA) to determine" (finding 7). Nothing in the record supports that anyone other than ACO Arapkiles made the decision to impose the penalty (findings 12, 13; COFDs (R4, tabs 14, 15)). Finally, appellant does not allege, and nothing in the record suggests, that the CO acted in violation of a statute or regulation. Accordingly, we conclude that the contracting officer's decision was not arbitrary and capricious or made in abuse of discretion.

---

[5] The Allowable Costs statute, at 10 U.S.C. § 2324(b) (current version at 10 U.S.C. § 3743(b)(1)), provides that "[i]f the head of the agency determines that a cost submitted by a contractor in its proposal for settlement is expressly unallowable under a cost principle … that defines the allowability of specific selected costs, the head of the agency shall assess a penalty. . . ." FAR 42.709 implements 10 U.S.C. § 2324(b) and establishes the extent of the CO's authority, providing that only the cognizant contracting officer shall waive penalties if the contractor satisfies the requirements of the subpart. 48 C.F.R. § 42.709-5.

<u>CONCLUSION</u>

For the reasons articulated above, the appeal is denied.

Dated:  November 7, 2024

LIS B. YOUNG
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62458, Appeal of Left Hand Design Corporation, rendered in conformance with the Board's Charter.

Dated:  November 7, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

17